```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF INDIANA
                    HAMMOND DIVISION
```

MATILDA PRESSWOOD,             )
                               )
              Plaintiff        )
                               )
        v.                     )   Case No. 2:07 cv 33
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security )
                               )
              Defendant        )

                    OPINION AND ORDER

     This matter is before the court on the Petition for Judicial
Review of the Decision of the Commissioner of Social Security
filed by the plaintiff, Matilda Presswood, on July 19, 2007. For
the reasons set forth below, the decision of the Commissioner is
**AFFIRMED.**

                       Background

     The plaintiff, Matilda Presswood, initially applied for
Disability Insurance Benefits on March 29, 2005, alleging a
disability onset date of March 17, 2005. (Tr. 46) The claim was
denied initially on April 28, 2005 and upon reconsideration on
June 9, 2005. (Tr. 32, 38) Presswood requested a hearing before
an Administrative Law Judge ("ALJ") on July 14, 2005. (Tr. 41) A
hearing was held before ALJ Dennis R. Kramer on February 9, 2006,
at which vocational expert Thomas Grzesik and medical expert Dr.
Daniel Girzadas testified. (Tr. 192)  On February 23, 2006, the
ALJ denied Presswood's application by written decision. (Tr. 192)
Following a denial of her request for review by the Appeals

Council on October 19, 2006, Presswood filed a complaint in this court on February 7, 2007. (DE 1)

Presswood was 44 years old at the time of the hearing. (Tr. 195) The record indicates that she was 5' 7" and weighed 250 pounds. (Tr. 69) Presswood's work history included a position as a certified nurse's assistant until March 2005 (Tr. 75) She left this job because she was experiencing knee pain. (Tr. 216) Prior to working as a nurse's assistant, Presswood held a variety of waitress positions dating back to at least 1994. (Tr. 65, 75)

On August 29, 2001, an MRI and x-ray of her left knee indicated mild loss of joint space height, minimal marginal spurring, and small joint effusion. (Tr. 108, 109) These records further indicated that Presswood had experienced left knee pain "off and on since 1997" and had a cortisone injection at some time in 1999. (Tr. 109) A contemporaneous disability determina-tion, apparently completed in conjunction with a pending applica-tion for supplemental security income, concluded that Presswood was not disabled on the basis of "osteoarthrosis and allied disorders." (Tr. 129)

The next set of records regarding Presswood's knee condition include a referral from Dr. Adolphus A. Anekwe indicating the need for an x-ray of Presswood's right knee based on a diagnosis of osteoarthritis. (Tr. 111) The x-ray was taken on April 27, 2004 and indicated "mild osteoarthritic changes . . . with nar-rowing joint space . . . involving medial and patellofemoral joint compartment." (Tr. 106) Approximately one year later, in a

2

one-page form addressed "to whom it may concern," Dr. Anekwe
indicated that Presswood was "unable to work or attend school"
for an indefinite period of time. (Tr. 110) The following day,
March 18, 2005, x-rays of Presswood's right and left knees
revealed mild degenerative changes and mild narrowing of the
lateral joint compartment, with small osteophyte formation. (Tr.
97-99)

Disability reports completed in April 2005 indicated that
Presswood had difficulty sitting, standing, and walking. (Tr. 67)
She indicated that the pain and swelling in her knees was unbear-
able and that she took Tramadol and Tylenol to manage the pain in
her knees. (Tr. 73) Presswood indicated that she continued to
cook, do laundry, drive, and clean her house.  However, she noted
that because it required using stairs, she had difficulty doing
laundry and that driving was difficult because it required her to
sit for extended periods of time. (Tr. 92)

On April 21, 2005, Dr. Anekwe completed a form indicating
that he had examined Presswood most recently on March 17, 2005
and April 5, 2005. (Tr. 101) He indicated that Presswood experi-
enced stiffness of both knees with daily knee pain, ambulated
with a slow gait, and could not walk over one-half of a city
block without severe pain. (Tr. 101, 102)  He further noted that
Presswood was scheduled for an eight-week, three session per week
physical therapy program, which she had not begun. (Tr. 101, 102)
Five days later, Dr. Anekwe completed a Workfare Medical Exemp-
tion Form indicating that Presswood's diagnosis included bilat-

3

eral knee arthropathy, exogenous obesity, and chronic obstructive pulmonary disease. (Tr. 115) He listed her prognosis over the next 30 days as "fair" and stated that she could not work, noting her inability to lift or bend. (Tr. 115)

A Physical Residual Functional Capacity Assessment completed on the same day by Dr. A.M. Dobson determined that Presswood occasionally could lift 20 pounds, frequently lift 10 pounds, and could stand or walk two hours and sit six hours. (Tr. 117) In support of the conclusions, Dr. Dobson cited evidence that Presswood walked with a slow gait, was currently in physical therapy, and the radiology showed mild osteoarthritic changes. (Tr. 117) On a disability determination completed that day by Dr. Dobson which listed Presswood's diagnosis as disorders of the back, Presswood was found not disabled. (Tr. 30) A subsequent disability determination, again listing disorders of the back, also found Presswood not disabled. (Tr. 31)

Following Presswood's request for a hearing before the ALJ, but before the hearing, she underwent an arthroscopic chrondo-plasty surgery with Dr. Kenneth Ham. (Tr. 165) Prior to the surgery, Dr. Ham noted that Presswood's knee condition failed to improve with conservative care. (Tr. 165) Dr. Ham also noted that he had given Presswood the option of an MRI "but because of sharp pain associated with twisting activities, the patient agreed with the arthroscopy." (Tr. 165-66) The surgery was conducted on September 29, 2005, and on October 3, 2005, Dr. Ham reported that Presswood had no complaints and was advised to exercise and

4

undergo physical therapy. (Tr. 168)  One month later, Dr. Ham conducted a follow-up exam and stated that Presswood reported constant, tolerable pain, and noted that it was an improvement over her condition before the procedure. (Tr. 186) He noted mild swelling and indicated that she was improved, presently using no walking assistive device, and could expect surgical pain to subside in another month. (Tr. 186)  In December 2005, Dr. Ham conducted another follow-up exam and stated that Presswood "feels much better . . . has got good motion . . . and is doing well." (Tr. 185)

A hearing before ALJ Kramer was held on February 9, 2006. Presswood testified that before her surgery, she did not use a cane but did after the surgery. (Tr. 201) She stated that prior to her surgery she could stand 30 to 45 minutes at most before needing to sit for 15 to 20 minutes. (Tr. 203, 204)

Presswood also indicated that she experienced difficulty getting up and sitting down before and after her surgery. (Tr. 205) She stated that after surgery she was prescribed a cane and could walk only about 20 feet without it. (Tr. 207-08) With the cane, Presswood testified that the could walk about 60 feet. (Tr. 208) She continued to report that she could stand only 30 to 45 minutes before being required to sit for 15 to 20 minutes. (Tr. 208)

Presswood told the ALJ that she continued to have knee pain which she rated a nine on a ten-point scale. (Tr. 209) She stated that she took pain relievers every six hours for relief, and

while waiting for the medicine to take affect, was unable to do anything. (Tr. 210) In response to the ALJ's inquiry into whether Presswood had difficulty sitting, she said she did not. (Tr. 204) However, later in the hearing she stated that she had difficulty sitting for more than three hours without the need to lay down. (Tr. 212) Presswood clarified that she laid down after taking medication in response to drowsiness caused by the medicine. (Tr. 212)

At the hearing, medical expert Dr. Daniel Girzadas, an orthopedic surgeon, questioned Presswood, who stated that since surgery, her knee was no better than before. (Tr. 220) Dr. Girzadas reviewed Presswood's records, including the August 2001 MRI, x-rays taken in April 2004 and March 2005, and her September 2005 surgery. (Tr. 221) Dr. Girzadas stated that Presswood did not meet a listing and rated her RFC as the ability to lift no more than 10 pounds occasionally, stand and walk two hours in an eight-hour day with an assistive device, and sit for six hours. (Tr. 223) Dr. Girzadas further stated that her RFC would include periodic alternating of sitting and standing on an hourly basis. (Tr. 223) Dr. Girzadas voiced his disagreement with Dr. Anekwe's conclusion that Presswood was disabled, stating:

> The findings and the x-rays and the MRI and the findings at the atrophy do not support serious changes of the joints and there's no evidence that she has [inaudible] and there's no evidence that she did require a total knee at the time of the arthroscopy.

> (Tr. 224)

On questioning by Presswood's attorney, the ME noted that based on her excess weight, more tissue inflammation may have accompanied the surgical procedure. (Tr. 224)

The vocational expert, Thomas Grzesik, stated that Presswood was not capable of performing her past work but that she was capable of sedentary jobs as a cashier, receptionist, or order clerk. (Tr. 228) In response to hypotheticals that limited her walking ability and sit stand option, the VE testified that these jobs remained available. (Tr. 229) However, if Presswood were required to lay down every four hours, no jobs would be available. (Tr. 229)

In his decision denying benefits, the ALJ reviewed Presswood's treatment with Dr. Anekwe and Dr. Ham and also noted her obesity. (Tr. 24) The ALJ concurred with Dr. Girzadas' testimony that Presswood did not meet a listing and noted her RFC as the capacity to

> lift/carry 10 pounds frequently, but no more than that occasionally, and stand at least 2 hours in an 8 hour day. She can also walk at least 2 hours in an 8-hour day, with the aide of a hand-held assistive device for the latter. The claimant can sit for about 6 hours per 8-hour day, but should periodically alternate sitting and standing.

> (Tr. 24)

The ALJ noted that the laboratory findings regarding her knees "have been comparatively mild." (Tr. 25) He stated that though these impairments "might reasonably be expected to produce some of her reported symptomatology, her statements concerning

the intensity, duration and total limiting effects associated therewith, especially before her surgery, are not entirely credible." (Tr. 25) The ALJ further noted that inconsistent with her testimony, she had reported to Dr. Ham following her surgery, that her pain was "tolerable," that she felt "much better," and that her swelling was down. (Tr. 26) On this basis, the ALJ agreed with testimony of the VE and concluded that Presswood was not disabled.

## Discussion

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."). *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NLRB**, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed.2d 140 (1938)). *See also* **Jens v. Barnhart**, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.

8

*Rice v. Barnhart*, 384 F.3d 363, 368-69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable

> to engage in any substantial gainful activity
> by reason of any medically determinable phys-
> ical or mental impairment which can be ex-
> pected to result in death or which has lasted
> or can be expected to last for a continuous
> period of not less than 12 months."

42 U.S.C. §423(d)(1)(A)

The Social Security regulations enumerate the five-step sequen-tial evaluation to be followed when determining whether a claim-ant has met the burden of establishing disability.  20 C.F.R. §404.1520, §416.920.  The ALJ first considers whether the claim-ant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. §404.1520(b), §416.920(b).  If she is, the claimant is not disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "signifi-cantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c), §416.920(c).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations.  20 C.F.R. §401, pt. 404,

subpt. P, app. 1.  If it does, then the impairment is acknowl-
edged by the Commissioner to be conclusively disabling.  However,
if the impairment does not so limit the claimant's remaining
capabilities, the ALJ reviews the claimant's "residual functional
capacity" and the physical and mental demands of her past work.
If, at this fourth step, the claimant can perform her past rele-
vant work, she will be found not disabled. 20 C.F.R.
§404.1520(e), §416.920(e).  However, if the claimant shows that
her impairment is so severe that she is unable to engage in her
past relevant work, then the burden of proof shifts to the
Commissioner to establish that the claimant, in light of her age,
education, job experience, and functional capacity to work, is
capable of performing other work and that such work exists in the
national economy.  42 U.S.C. §423(d)(2); 20 C.F.R. §404.1520(f),
§416.920(f).

In the first of her challenges, Presswood claims the ALJ
erred by failing to consider her obesity. Under  Social Security
Ruling 02-1p, "an ALJ should consider the effects of obesity
together with the underlying impairments, even if the individual
does not claim obesity as an impairment." *Prochaska v. Barnhart*,
454 F.3d 731, 737 (7th Cir. 2006). It is the claimant's burden to
"specify how her obesity further impaired her ability to work."
*Prochaska*, 454 F.3d at 737 (*citing Skarbek v. Barnhart*, 390 F.3d
500, 504 (7th Cir. 2004). *See also Hisle v. Astrue*, 2007 WL
4439843 (7th Cir. 2007)("This court has repeatedly excused the
harmless error of an ALJ who fails to explicitly address a claim-

ant's obesity but arrives at a final decision after reviewing the medical opinions of physicians familiar with the claimant's obesity.")

Unlike these examples, in this instance the ALJ expressly noted Presswood's obesity in his decision, and the ME discussed it during the hearing. Rather, Presswood's objection appears to be that the ALJ only "briefly" noted her obesity when he stated that it was one of two severe impairments. However, Presswood has provided no argument to address "how her obesity affects her ability to work other than to suggest that it generally exacerbates her impairments." *Hisle*, 2007 WL 4439843 at *4. Accordingly, there is no error in this objection to the ALJ's decision.

Presswood next claims that the ALJ failed to undertake a "function by function" assessment with respect to Presswood's ability to walk. Social Security Ruling 96-8p states that an ALJ must create an RFC as a "function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities." SSR-96-8p at *3. The ruling goes on to explain that each function - sitting, standing, walking, lifting, carrying, pushing, and pulling - "must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours.')". *See e.g. Earnest v. Astrue*, No. 1:06-cv-714-JDT-TAB, 2007 WL 2904067 at *11-12 (S.D. Ind. Sept. 29, 2007).

Presswood's objection is not that the ALJ failed to consider the function of walking. The ALJ clearly stated that the RFC

limited Presswood to walking two hours of an eight hour day.
Rather, Presswood's objection is that she also testified that she
could walk only 60 feet with the use of a cane. Consequently,
according to her argument, even though "plaintiff may be able to
walk two hours out of eight, the ME was never asked to consider
how she could walk this distance at one time." Presswood summa-
rizes the argument, stating that the VE did not have all of the
information to determine available jobs and "it may be that the
sedentary jobs described involved walking up to two hours, yet
also required walking distances larger than 60 feet." (Plain-
tiff's Memorandum in Support, p. 14)

Presswood appears to have overlooked the fact that the VE
was present at the hearing and specifically was asked by the ALJ,
in hypothetical four, for the number of jobs available if the
claimant, in addition to other limitations, were limited to
walking 20 feet without a cane and 60 feet with a cane. (Tr. 228)
The VE responded that the same cashier, receptionist, and order
clerk jobs were relevant. No conflicts were pointed out between
the requirements of these jobs and Presswood's capacity at the
hearing.  However, even now, assuming that the VE ignored this
part of the hypothetical, Presswood does not suggest that any of
these jobs requires walking more than 60 feet at a time. No error
was committed. *See e.g. **Greenwood v. Barnhart**, 433 F.Supp.2d 915,
930 (N.D. Ill. 2006) ("Thus, notwithstanding Claimant's several
assertions and examples of conflicts between the VE and the DOT,
the ALJ appropriately relied on the VE's testimony.").

Presswood next claims that the ALJ erred in partially discounting her credibility. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska***, 454 F.3d at 738 ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. ***Nelson v. Apfel***, 131 F.3d 1228, 1237 (7th Cir. 1997); ***Allord v. Barnhart***, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. ***Steele v. Barnhart***, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a); ***Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir. 2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evi-

dence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703
(7th Cir. 2004).  If the claimant's impairments reasonably could
produce the symptoms of which the claimant is complaining, the
ALJ must evaluate the intensity and persistence of the claimant's
symptoms through consideration of the claimant's "medical his-
tory, the medical signs and laboratory findings, and statements
from [the claimant, the claimant's] treating or examining physi-
cian or psychologist, or other persons about how [the claimant's]
symptoms affect [the claimant]."  20 C.F.R. §404.1529(c);
*Schmidt,* 395 F.3d at 746-47 ("These regulations and cases, taken
together, require an ALJ to articulate specific reasons for
discounting a claimant's testimony as being less than credible,
and preclude an ALJ from merely ignoring the testimony or relying
solely on a conflict between the objective medical evidence and
the claimant's testimony as a basis for a negative credibility
finding.").

Although a claimant's complaints of pain cannot be totally
unsupported by the medical evidence, the ALJ may not make a
credibility determination "solely on the basis of objective
medical evidence."  SSR 96-7p, at *1.  *See also* ***Indoranto v.
Barnhart***, 374 F.3d 470, 474 (7th Cir. 2004); ***Carradine v. Barn-
hart***, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling,
the fact that its source is purely psychological does not disen-
title the applicant to benefits.").  Rather, if the

> [c]laimant indicates that pain is a signifi-
> cant factor of his or her alleged inability
> to work, the ALJ must obtain detailed de-

> scriptions of the claimant's daily activities
> by directing specific inquiries about the
> pain and its effects to the claiming.  She
> must investigate all avenues presented that
> relate to pain, including claimant's prior
> work record, information and observations by
> treating physicians, examining physicians,
> and third parties.  Factors that must be
> considered include the nature and intensity
> of the claimant's pain, precipitation and
> aggravating factors, dosage and effectiveness
> of any pain medications, other treatment for
> relief of pain, functional restrictions, and
> the claimant's daily activities.  (internal
> citations omitted).

> ***Luna v. Shalala***, 22 F.3d 687, 691 (7th Cir.
> 1994)

*See also **Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir.
2001).

In addition, when the ALJ discounts the claimant's descrip-
tion of pain because it is inconsistent with the objective
medical evidence, he must make more than "a single, conclusory
statement . . . . The determination or decision must contain
specific reasons for the finding on credibility, supported by the
evidence in the case record, and must be sufficiently specific to
make clear to the individual and to any subsequent reviewers the
weight the adjudicator gave to the individual's statements and
the reasons for that weight."  SSR 96-7p, at *2.  *See **Zurawski***,
245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir.
1995) (finding that the ALJ must articulate, at some minimum
level, his analysis of the evidence).  He must "build an accurate
and logical bridge from the evidence to [his] conclusion."
***Zurawski***, 245 F.3d at 887 (*quoting **Clifford***, 227 F.3d at 872).

15

When the evidence conflicts regarding the extent of the claim-
ant's limitations, the ALJ may not simply rely on a physician's
statement that a claimant may return to work without examining
the evidence the ALJ is rejecting.  *See **Zurawski***, 245 F.3d at 888
(*quoting **Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986))
("Both the evidence favoring the claimant as well as the evidence
favoring the claim's rejection must be *examined*, since review of
the substantiality of evidence takes into account whatever in the
record fairly detracts from its weight."). (emphasis in original)

In describing Presswood's RFC, the ALJ credited her testi-
mony regarding her condition and provided for an RFC reflecting
only a range of sedentary work. The ALJ discredited testimony
that she was incapable of any work. In support, the ALJ noted
that Presswood had described her pain as "tolerable" and "much
better" following surgery.  The ALJ also noted that the clinical
findings indicated only mild conditions and relied on the medical
experts' comparable testimony.  The ALJ also shaped the RFC to
reflect the consideration of Presswood's use of Tylenol 3 every
four hours. The ALJ inquired into these side effects at the
hearing and included limitations to avoid driving and operating
machinery based upon the ME's response to these questions.

Presswood argues that the ALJ ignored that her pain in-
creased subsequent to her post surgical follow-up visits with Dr.
Ham. However, this was not Presswood's testimony. Rather, Press-
wood was asked how her knee was since the surgery to which she

responded, without qualification, "As a matter of fact, it's done
gotten worser."

> Q.   It's gotten worse?
>
> A.   It's gotten worse, I mean, I'm not gonna
>      say worser, it's the same way it was
>      before the surgery.
>
> Q.   And what does your doctor tell you?
>
> A.   He said it has gotten worse and just
>      recently he thought it was gonna be a
>      knee replacement and it wasn't.

> (Tr. 220)

There is no indication from this testimony, as Presswood now
argues, that initially her knee was "much better" and "tolera-
ble," as she reported to Dr. Ham, and only later became worse or
at least no better than before the surgery. Accordingly, the ALJ
sufficiently documented his credibility determination.

Presswood also faults the ALJ for discounting the opinion of
Presswood's treating physician, Dr. Anekwe. A treating source's
opinion is entitled to controlling weight if the "opinion on the
issue(s) of the nature and severity of [the claimant's] impair-
ment(s) is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the
other substantial evidence" in the record.   20 C.F.R.
§404.1527(d)(2). *See also Schmidt*, 496 F.3d at 842; *Gudgell v.
Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  The ALJ must "mini-
mally articulate his reasons for crediting or rejecting evidence
of disability." *Clifford*, 227 F.3d at 870 *(quoting Scivally v.
Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).  *See also* 20

C.F.R. §404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Internal inconsistencies in a treating physician's opinion may provide a good reason to deny it controlling weight. 20 C.F.R. §404.1527(c)(2); *Clifford*, 227 F.3d at 871. Furthermore, controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt,* 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."). *See e.g. Latkowski v. Barnhart*, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. Appx. 939, 942 (7th Cir. 2004).  Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician also may "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). (internal citations omitted)

The ALJ stated that he rejected Dr. Anekwe's conclusions of

complete disability based on the ME's testimony that the opinion
was inconsistent with the medical evidence. Specifically, the ALJ
pointed to the x-rays and MRI that revealed only mild changes to
the joints or damage to cartilage.  The basis for Dr. Anekwe's
conclusion, and consequently any supporting evidence that the ALJ
potentially rejected, is unclear from the record. Dr. Anekwe's
opinions appear to be based on a limited treatment history and
are reflected on a fill-in-the blank form completed prior to
referring her for x-rays. In April 2005, Dr. Anekwe indicated
that Presswood was unable to work but that her prognosis was
"fair." (Tr. 115) He further indicated that Presswood was unable
to work because her restrictions included "no lifting, no bend-
ing." (Tr. 115) In light of the fuller examination of the evi-
dence made by the ME, the ALJ committed no error in limiting the
weight of Dr. Anekwe's records.

Finally, Presswood argues that the RFC determination is
erroneous. She strings together an argument that states that
because sitting and rising is difficult and she must "routinely
repeat this painful process," she would "constantly reignite her
symptoms" which would be highly distracting and she consequently
would be "functionally inattentive." Notwithstanding the specula-
tive nature of this argument and the fact that Presswood has
never indicated lack of concentration as an element of her
disability claim, there is no support for the assumption that
Presswood must "routinely repeat" this process. In her testimony,
she stated that *when she is standing*, she must take a break and

sit for about 15 to 20 minutes. The ALJ accommodated this in the RFC by including the need to periodically alternate sitting and standing. Presswood, however, has mischaracterized it as a requirement that, even when working at a sedentary job *and primarily sitting*, she must still rise and sit every 15 to 20 minutes. In fact, she never indicated that after sitting for as little as 15 minutes she was required to stand and thereby "routinely repeat" this process. Her testimony was that she did not have any problem sitting, which she later modified, stating that she could sit for about three hours before experiencing discomfort. (Tr. 204, 212)

Finally, Presswood argues that the ALJ's step five determination, made in conjunction with the testimony of the medical expert, is flawed. The argument is based on her prior arguments regarding the ALJ's RFC determination, specifically that the ALJ's hypotheticals failed to include all of her limitations. *See Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004) ("Ordinarily, a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record.") Presswood acknowledges that the ALJ properly inquired into whether the VE's testimony was consistent with the Dictionary of Occupation Titles. The VE responded:

> The cashier positions that would be like
> consistent with various cashiering positions,
> the receptionist position, I believe, is
> rated as sedentary, but with an SVP of 3. The
> numbers I gave would be consistent with un-
> skilled receptionist work, as well as the
> order clerk position, the DOT is SVP 3 and

>           the jobs that I listed and the number I list-
>           ed would be consistent with the unskilled
>           order clerk.
>
>           (Tr. 230)

However, she goes on to argue, largely as a derivative of the

already rejected argument that the ALJ failed to account for all

of her limitations, that this testimony was inconsistent, and

that the ALJ was required to resolve it. However, any inconsis-

tency referred to by Presswood arises only if the limits to her

RFC are expanded beyond the degree found by the ALJ. Because the

court already has concluded that the ALJ's RFC was supported by

substantial evidence, this argument fails.

_____

For the foregoing reasons, pursuant to sentence four of 42

U.S.C. §405(g), the decision of the Commissioner is **AFFIRMED.** The

Clerk is **DIRECTED** to close this case.

ENTERED this 14th day of March, 2008


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge


21